IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| HOPE CHANNEL INTERNATIONAL, INC., a Maryland non-profit corporation, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 1:26-CV-23123-BB |
| HOPE MEDIA GROUP, a Texas non-profit corporation, | § | |
| Defendant. | § | |

**DEFENDANT HOPE MEDIA GROUP'S MOTION TO DISMISS UNDER RULES 12(b)(2), 12(b)(3), AND 12(b)(6), OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

## INTRODUCTION AND PRELIMINARY STATEMENT

Defendant Hope Media Group ("***HMG***"), a Texas nonprofit corporation headquartered just north of Houston, Texas, respectfully moves this Court to dismiss Plaintiff Hope Channel International, Inc.'s ("***HCI***") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), or, in the alternative, to transfer this action to the United States District Court for the Southern District of Texas, Houston Division, under 28 U.S.C. §§ 1406(a), 1631, and/or 1404(a).

This case does not belong in the Southern District of Florida – and HCI knows it. HCI, a Maryland nonprofit headquartered in Silver Spring, Maryland, has sued HMG – a Texas nonprofit that adopted, registered, and manages the accused HOPE MEDIA GROUP, HOPE EVENTS, and HOPE NATION marks entirely from its Texas headquarters – in a forum to which HMG has no meaningful connection relevant to this dispute. HCI's jurisdictional allegations rest on HMG's operation of radio stations under entirely different brands ("Way FM" and "Vida Unida") and on generally accessible websites and streaming applications that are available nationwide, not

targeted at Florida. These allegations are insufficient to establish either personal jurisdiction or proper venue in this District.

The substantive claims fare no better. HCI's Complaint fails to state a claim upon which relief can be granted. It relies on conclusory assertions of similarity between marks that are dissimilar on their face, conflates distinct marks and services, and seeks to extend a single television-broadcasting registration for HOPE CHANNEL into radio, digital media, charitable fundraising, ministry, events, and other services without plausible factual support. The Complaint's allegations of likelihood of confusion, willfulness, and competitive injury are wholly conclusory and fail to satisfy the pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Should the Court decline to dismiss, HMG respectfully requests in the alternative that this action be transferred to the Southern District of Texas, where HMG resides, where the relevant mark-adoption and management decisions occurred, and where HMG has already filed a declaratory judgment action presenting the full controversy between the parties.

## BACKGROUND

### A. The Parties

HMG is a Texas nonprofit corporation located at 21620 Valley Ranch Parkway, New Caney, Texas 77357. HMG is a Christian media organization that operates radio stations and digital, event, fundraising, ministry, and media services through brands including KSBJ, WayFM, NGEN, Vida Unida, and others. Since 1982, HMG has operated KSBJ, one of the largest nonprofit Christian radio stations in the United States. In 2022, HMG merged with Way Media. HMG's Board approved the adoption of the "Hope Media Group" house name in June 2020, with the name change becoming official in August 2020.

HCI is a Maryland nonprofit corporation located at 12501 Old Columbia Pike, Silver Spring, Maryland 20904. HCI asserts rights in the registered mark HOPE CHANNEL (covering television broadcasting) (the "***Asserted Registered Mark***") and unregistered marks HOPE SABBATH SCHOOL, CELEBRATION OF HOPE, and HOPELINK (collectively, the "***Asserted Unregistered Marks***" and collectively with the Asserted Registered Mark, the "***Asserted Marks***").

**B. HCI's Florida Complaint**

On May 1, 2026, HCI filed a Complaint in this District (the "***Complaint***") asserting four counts: (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition and false designation of origin under 15 U.S.C. § 1125(a); (3) cancellation of HMG's federal registrations; and (4) Florida common-law unfair competition. The Complaint alleges that HMG's HOPE MEDIA GROUP, HOPE EVENTS, and HOPE NATION marks (collectively, the "***Challenged Marks***") infringe HCI's asserted rights. Notably, the Complaint does not address HMG's HOPE ON DEMAND mark and its incontestable registration covering the same, which would continue to coexist with HCI's Asserted Registered Mark as it has for nearly seven years. A true and correct copy of the Section 15 Declaration of Incontestability filed by HMG in support of U.S. Registration No. 6,023,528 for the mark HOPE ON DEMAND filed on March 25, 2026, and the TSDR page for the registration accessed on May 29, 2026, is attached hereto as Exhibit A, a true and correct copy of the USPTO TSDR pages for HCI's U.S. Registration No. 3,066,366 (*i.e.*, the Asserted Registered Mark) and U.S. Application No. 97/680,944 accessed on May 29, 2026, is attached hereto as Exhibit B, and a true and correct copy of the USPTO TSDR pages for the registrations and applications covering the Challenged Marks accessed on May 29, 2026, is attached hereto as Exhibit C. The HOPE ON DEMAND mark is, however, included in HMG's declaratory judgment action, which HMG has filed against HCI in the Southern District of Texas as set forth below.

To support jurisdiction and venue, HCI merely alleges that HMG "owns and/or operates multiple radio stations in this District" and "has provided and offered its services under the infringing marks within this District." Compl. ¶ 6. However, the Complaint's own factual allegations reveal that the Florida stations operate under the brands "Way FM" and "Vida Unida" – not the Challenged Marks. Compl. ¶ 36. The Complaint also alleges that HMG's websites and streaming services are accessible in Florida, but those same services are accessible nationwide and are not alleged to be targeted at Florida. Compl. ¶¶ 38-39.

**C. HMG's Declaratory Judgment Action in Texas**

HMG has filed a declaratory judgment action in the United States District Court for the Southern District of Texas, Houston Division, seeking declarations that HMG's use, registration, and applications for the Challenged Marks and the HOPE ON DEMAND mark do not infringe HCI's asserted rights (the "***Texas Declaratory Judgment Action***"). A true and correct copy of the HMG's complaint in that action, filed on June 18, 2026, is attached hereto as Exhibit D. That action sets forth HMG's position that this dispute is centered in Texas, where HMG and the relevant HMG personnel are located, and where the relevant branding decisions were made. The Texas Declaratory Judgment Action demonstrates that the full scope of the controversy is properly before the Texas court. Texas is the proper forum for this dispute because of HMG's contacts there and the direct connection between Texas and the challenged conduct.

By contrast, HMG has no sufficient contacts with this District in connection with the Challenged Marks, while HCI has meaningful contacts in Texas – particularly in the Southern District of Texas – through its own HOPE-formative activities, including advertising and sponsorship activity during the last 2 years in Houston, that used the Asserted Registered Mark

during the last 2 years. A true and correct copy of materials reflecting HCI's 2024 and 2025 Adventist Young Professionals conference presence and sponsorship in Houston, Texas is attached hereto as Exhibit E.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction requires the plaintiff to establish a prima facie case that jurisdiction exists. *BTG Patent Holdings, LLC v. Bag2Go GmbH*, 193 F. Supp. 3d 1310, 1315 (S.D. Fla. 2016). If the defendant challenges jurisdiction by submitting evidence that contradicts the complaint's jurisdictional allegations, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Id.*; *Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n*, 140 F. Supp. 2d 1325, 1328 (S.D. Fla. 2001). Under Rule 12(b)(3), venue is improper unless the plaintiff shows that the action falls within one of the categories of 28 U.S.C. § 1391(b). Under Rule 12(b)(6), a complaint must be dismissed if it fails to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(b)(2)

Florida courts apply a two-step analysis to determine personal jurisdiction over a nonresident defendant: (1) whether the plaintiff has alleged sufficient facts to bring the action within the ambit of Florida's long-arm statute, Fla. Stat. § 48.193; and (2) whether the defendant has sufficient "minimum contacts" with Florida to satisfy the Due Process Clause of the Fourteenth Amendment. *See BTG Patent Holdings*, 193 F. Supp. 3d at 1315-20. Although trademark infringement may in some circumstances be treated as a tortious act for long-arm purposes, a plaintiff still must plead and, if challenged, prove facts ***tying substantial aspects*** of the alleged

tortious conduct or injury to Florida. *Miami Breakers*, 140 F. Supp. 2d at 1329-30. HCI has not done so: it is a Maryland plaintiff, HMG is a Texas defendant, and the Complaint alleges no direct Florida-based use of the Challenged Marks and no Florida-specific marketplace harm. Put simply, this case involves a Maryland plaintiff suing a Texas defendant in Florida over Texas-based conduct – there is nothing Floridian about it except HCI's choice of forum.

**A. Florida's Long-Arm Statute Is Not Satisfied**

*Miami Breakers* is a closely analogous case that confirms that HCI's allegations fail at the long-arm step. In *Miami Breakers*, a Florida trademark plaintiff invoked Florida's long-arm statute based on the defendants' participation in a Florida combine and draft, plans for a Florida franchise, websites displaying the accused mark, newspaper advertising, and limited in-state use of the accused name. 140 F. Supp. 2d at 1327-30. The court rejected those contacts because the plaintiff failed to show either a general course of business activity in Florida for pecuniary benefit or that substantial aspects of the alleged Lanham Act and unfair-competition tort occurred in Florida. *Id.* at 1329-30. In particular, the court held that a passive website, out-of-state advertising not shown to target Florida, a national advertisement that did not use the accused mark, and isolated in-state references to the accused name did not amount to substantial Florida tortious conduct. *Id.* at 1329-30.

HCI's jurisdictional allegations are insufficient to satisfy Florida's long-arm statute – and, *a fortiori*, the personal-jurisdiction analysis as a whole. The Complaint's sole basis for personal jurisdiction is HMG's alleged operation of radio stations "in this District" and provision of services "under the infringing marks within this District." Compl. ¶ 6. But the Complaint's own factual allegations contradict that theory: it identifies the Florida stations as operating under "Way FM" (West Palm Beach, Panama City Beach, Charlotte County, Fort Myers, Marco Island, Naples) and

"Vida Unida" (Miami, Stuart, West Palm Beach) – ***not the Challenged Marks***. Compl. ¶ 36. Operating radio stations in Florida ***under different brand names*** does not constitute purposeful use of the Challenged Marks in this forum, and HCI's conclusory assertion cannot overcome the Complaint's more specific allegations showing that the alleged Florida activity is not suit-related use of the Challenged Marks. Way FM and Vida Unida are not the Challenged Marks – and HCI's Complaint admits as much. Operating those stations in Florida is not use of HMG's HOPE marks here. HMG does maintain a small North Palm Beach office supporting operational work for its Florida stations, but the personnel based there do not handle the accused branding decisions, registrations, or challenged uses at issue in this case. A true and correct copy of the Declaration of Joe Paulo, the CEO of HMG ("***Paulo Decl.***"), dated June 22, 2026, is attached hereto as <u>Exhibit F</u> (Paulo Decl. ¶¶ 5-7, 10). The office's limited Hope Media Group/WayFM delivery and directory references, and any internal suite logos, do not change the analysis or transform those station operations into substantial Florida conduct giving rise to HCI's claims. <u>Exhibit F</u> (Paulo Decl. ¶ 7).

**B. Due Process Is Not Satisfied**

Even if HCI could satisfy Florida's long-arm statute, exercising jurisdiction would offend due process. Due process requires HMG's own suit-related conduct to create a substantial connection with Florida; jurisdiction cannot rest on HCI's forum selection, counsel convenience, third-party access to nationwide digital content, or Florida operations that are not suit-related. *Walden v. Fiore*, 571 U.S. 277, 284-86 (2014). In this District, due process is not satisfied by online contacts that merely link a defendant to all states equally; the defendant's suit-related contacts must tie it to the forum in a way that makes it reasonable to anticipate being haled into court there. *J.B. Oxford v. Net Trade, Inc.*, 76 F. Supp. 2d 1363, 1367-68 (S.D. Fla. 1999); *see also*

*PG Creative Inc. v. Affirm Agency LLC*, No. 18-cv-24299, 2019 WL 5684219, at *4-6 (S.D. Fla. Oct. 31, 2019) (dismissing Lanham Act claims for lack of personal jurisdiction where Florida plaintiff's residence could not supply defendant's contacts and out-of-state use of plaintiff's mark was not aimed at Florida); *Honus Wagner Co. v. Luminary Grp. LLC*, No. 17-cv-61317, 2017 WL 6547899, at *10-13 (S.D. Fla. Dec. 21, 2017) (same; globally accessible website and generalized contacts insufficient where defendants did not specifically target Florida and the alleged Florida contacts did not establish purposeful availment).

HMG has not purposefully directed any suit-related use of the Challenged Marks toward Florida. HMG is a Texas nonprofit headquartered in Texas, and the adoption, registration, and management of the Challenged Marks occurred in Texas. Exhibit F (Paulo Decl. ¶¶ 2-4, 10). Although HMG's WayFM and Vida Unida brands are associated with Florida stations, the Complaint does not plead facts showing Florida-directed use or offering of services under the Challenged Marks, nor does it allege targeted marketing or solicitation of Florida consumers under those marks. Regardless, HCI could not accurately allege this. HMG maintains one small North Palm Beach office with three employees, those employees perform operational roles relating to the WayFM, Vida Unida, KSBJ, and/or Worship 24/7 brands, and limited traffic-log responsibilities for other HMG stations; they do not have responsibilities related to operations under the Challenged Marks, this matter, or the branding decisions, registrations, or challenged uses of the Challenged Marks at issue. Exhibit F (Paulo Decl. ¶¶ 5-7). HMG does not engage in targeted marketing or solicitation of Florida consumers under the Challenged Marks. Exhibit F (Paulo Decl. ¶ 8). The Complaint's reliance on the use of the Challenged Marks in nationally accessible websites (hopemediagroup.com, wayfm.com, vidaunida.com) and streaming

applications available everywhere does not establish purposeful direction toward Florida. Exhibit F (Paulo Decl. ¶ 9).

Nor is HMG subject to general jurisdiction in Florida. A corporation is subject to general jurisdiction only where it is "essentially at home" – typically its state of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). HMG is incorporated in Texas and headquartered in Texas. Operating radio stations in Florida under non-accused brands and maintaining one small operations office does not render HMG "at home" in Florida. Exhibit F (Paulo Decl. ¶¶ 2, 5–7).

The Southern District of Florida has specifically held that a nationally accessible web presence, without more, is insufficient to establish personal jurisdiction. In *J.B. Oxford Holdings, Inc*, this Court held that due process was not satisfied where an out-of-state defendant's contacts with Florida consisted of a nationally accessible website and related internet activity. 76 F. Supp. 2d at 1367-68. The defendant there maintained interactive websites accessible in Florida, listed a national toll-free number, and had a pending Florida business application; nonetheless, the court held that jurisdiction was lacking because the defendant's online activity was not directed to Florida, it did not sell services to Florida residents, and it had no Florida offices, employees, property, or customers. *Id*. The court explained that internet contacts must "illustrate purposeful availment of the privilege of conducting commercial activity in the forum – contacts that tie the defendant to a particular state, not those that merely link with equal strength the defendant to all states." *Id.* at 1367. The court further held that "merely having an interactive web site does not end the court's inquiry into jurisdiction." *Id.* at 1368.

Similarly, in *BTG Patent Holdings*, this Court dismissed for lack of personal jurisdiction where the defendant had no Florida offices, employees, property, targeted marketing, or Florida-

specific sales ***tied to the claims***, and where internet press releases, third-party news coverage, and social-media activity were not enough to establish Florida-directed conduct. 193 F. Supp. 3d at 1317-20.

The same reasoning applies here. HCI's alleged Florida facts concern WayFM and Vida Unida station operations, not substantial aspects of the alleged use of the Challenged Marks. The alleged presence of the Challenged Marks on generally accessible websites and streaming platforms is, at most, nationwide accessibility. Under *Walden*, the Supreme Court explained that the relevant question is whether HMG's own suit-related conduct creates a substantial connection with Florida – not whether HCI selected this forum, whether third parties can access nationwide digital content here, or whether HMG conducts unrelated Florida activity through its Florida stations and small North Palm Beach operations office. 571 U.S. at 284-86; Exhibit F (Paulo Decl. ¶¶ 5-10).

Here, HCI itself is not even a Florida resident – it is a Maryland corporation. The alleged Florida connection consists of radio stations operating under different brands, a small operations office whose personnel are not involved in the relevant branding decisions, and websites accessible everywhere. Exhibit F (Paulo Decl. ¶¶ 5-10). These allegations fail to demonstrate suit-related conduct by HMG creating a substantial connection with Florida. Neither party directs suit-related use of the marks at issue to this District; by contrast, both parties have HOPE-formative activities in the Southern District of Texas. *See* Exhibits E-F. This case therefore does not belong here. The Southern District of Texas is the obvious forum, and HCI's selection of this District appears to reflect Plaintiff's counsel's convenience (or defense inconvenience) rather than any genuine dispute-related connection to Florida. Of the states listed on WayFM's website for radio-station

availability, Florida appears to be the only state where HCI's counsel also has an office. That filing choice is unlikely to be a coincidence. *See* Compl., Exhibit 3.

Without sufficient contacts with the forum state relevant to the claims in this dispute, it would not comport with traditional notions of fair play and substantial justice to subject HMG to personal jurisdiction in Florida. In *J.B. Oxford*, this Court dismissed Lanham Act claims and noted that the plaintiff had other federal forums available where personal jurisdiction existed and that the Florida common-law claim was secondary to federal trademark claims that could be heard in any proper federal forum. 76 F. Supp. 2d at 1368. The same is true here: HCI may litigate any properly pleaded federal and related state-law claims in a court with personal jurisdiction over HMG and a genuine connection to the accused conduct. Florida is not that forum. Texas is.

## II. THE COMPLAINT SHOULD BE DISMISSED FOR IMPROPER VENUE UNDER RULE 12(b)(3)

The jurisdictional defects identified above compel a parallel conclusion on venue. Venue is also improper in this District. Under 28 U.S.C. § 1391(b), a civil action may be brought in: (1) a district where any defendant resides, if all defendants reside in the same state; (2) a district in which ***a substantial part*** of the events or omissions giving rise to the claim occurred; or (3) if there is no district in which the action may otherwise be brought, any district where any ***defendant is subject to personal jurisdiction***. Because neither HMG nor HCI resides in Florida, venue is proper only if a substantial part of the events giving rise to HCI's claims occurred in this District or, if that provision does not apply, if HMG is subject to personal jurisdiction here. As set forth above, HMG is not subject to personal jurisdiction in this District based on the nature of this dispute and the claims asserted in the Complaint. Venue is therefore not proper here.

Further, no substantial part of the events giving rise to HCI's trademark claims occurred in the Southern District of Florida. In the Eleventh Circuit, § 1391(b)(2) focuses on "only those acts

and omissions that have a close nexus to the wrong," and the relevant acts are those "directly giving rise to the claim." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003) (citing 28 U.S.C. § 1391(b)(2)). The relevant events for a trademark infringement action include the defendant's adoption, use, and promotion of the accused marks. All of those events occurred in Texas. HMG began using HOPE ON DEMAND in 2019, and later adopted the HOPE MEDIA GROUP name as its house brand in Texas in 2020. HMG's Board approved the name change in Texas. HMG registered the Challenged Marks from Texas. HMG manages and controls its branding from Texas. The operative decisions that gave rise to this dispute all occurred in Texas – not Florida.

HCI's venue allegations rely on the same defective theory as its jurisdictional allegations: that HMG operates radio stations in this District and that its websites and streaming services are accessible here. HCI did not allege anything beyond those points. And, nor could it. The Florida stations operate under other brands, not the Challenged Marks, and the small North Palm Beach office supports local station operations rather than the Texas-based branding decisions, registrations, and challenged uses giving rise to this dispute. Exhibit F (Paulo Decl. ¶¶ 5-7, 10). Limited Hope Media Group/WayFM delivery and directory references at the office do not convert those Florida station operations into substantial venue-related events involving the Challenged Marks. Exhibit F (Paulo Decl. ¶ 7).

Nationally accessible websites and streaming services do not make a "substantial part" of the events occur in every judicial district where those services can be accessed; otherwise, venue would be proper in every district in the country, rendering § 1391(b)(2)'s "substantial part" requirement meaningless. *See Jenkins Brick*, 321 F.3d at 1371 ("Only the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those

locations hosting a 'substantial part' of the events are to be considered."). HMG's recently filed declaratory judgment action in the Southern District of Texas (attached as Exhibit D) further demonstrates that the center of gravity of this dispute lies in Texas. That complaint sets forth in detail how HMG's decisions regarding the accused marks were made in Texas, how HMG is headquartered in Texas, and how HCI's venue theory rests on radio stations operating under unrelated brands and nationally accessible digital services rather than purposeful suit-related use of the Challenged Marks in Florida.

## III. THE COMPLAINT FAILS TO STATE A CLAIM UNDER RULE 12(b)(6)

Even if this Court has jurisdiction and venue is proper – which HMG contests – HCI's Complaint should be dismissed because it fails to state plausible claims for relief. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* HCI's Complaint is precisely that: threadbare recitals and conclusory statements masquerading as a trademark case.

### A. Count I (Trademark Infringement Under § 32) Fails

Count I alleges infringement of HCI's single registered mark, HOPE CHANNEL (U.S. Reg. No. 3,066,366), which covers "television broadcasting, cable television broadcasting, and television broadcasting via a global computer network" and "entertainment, namely, a continuing religious program broadcast over television, satellite, audio and video media." To state a claim under 15 U.S.C. § 1114, HCI must plausibly allege priority and that HMG used a mark in commerce in a manner likely to cause confusion with HCI's Asserted Registered Mark in connection with the registered or plausibly related goods or services. *See Fla. Int'l Univ. Bd. of*

*Trs. v. Fla. Nat'l Univ., Inc.*, 91 F. Supp. 3d 1265, 1273-74 (S.D. Fla. 2015). The touchstone of Lanham Act trademark liability is likely consumer confusion, not merely unauthorized use of a protected mark. *Id.; see also Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647-48 (11th Cir. 2007); *Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 314-18 (5th Cir. 1981). The Complaint fails to do so for several reasons, each of which independently reinforces dismissal at the pleading stage.

First, the marks at issue are not similar. The Asserted Registered Mark is HOPE CHANNEL; the Challenged Marks are HOPE MEDIA GROUP, HOPE EVENTS, and HOPE NATION. These are distinct multi-word marks that share only the common word "HOPE". The word "HOPE" is highly suggestive if not descriptive for religious media and ministry services, where the concept of hope is fundamental. Courts routinely hold that marks comprised of commonly used or descriptive terms are weak and entitled to a narrower scope of protection. *See, e.g.*, *Sun Banks of Fla.*, 651 F.2d at 315-16. This District has likewise recognized that even an incontestable mark's presumed strength may be rebutted by evidence of extensive third-party use in the relevant marketplace. *Fla. Int'l Univ.*, 91 F. Supp. 3d at 1275-77. HCI and its predecessor have told the USPTO that HOPE-formative marks must be considered in their entireties, that "HOPE per se" is not the dominant element for religious goods and services, and that "HOPE" is weak in the religious field. A true and correct copy of the HOPE CHANNEL application Response to Office Action dated July 22, 2004, is attached hereto as Exhibit G (pages 3-4). HCI's predecessor made those statements in a July 22, 2004 Response to Office Action for the Asserted Registered Mark. Exhibit G.

In a March 11, 2024 Response to Office Action, HCI argued to the USPTO that "[t]he Principal Register is rife with third party HOPE marks that co-exist despite being nearly identical

or closely similar and being applied to related services in the same class," and that consumers in this crowded field look to distinctions between HOPE-formative marks, making confusion improbable. A true and correct copy of the HOPE STUDIOS application Response to Office Action dated March 11, 2024, is attached hereto as Exhibit H (page 4). HCI's current theory is therefore both conclusory and inconsistent with its own USPTO prosecution positions.

Second, the services are not plausibly alleged to be identical or virtually identical – they are not even close. HCI's registration covers television broadcasting, cable television broadcasting, television broadcasting via a global computer network, and a continuing religious program. *See* Exhibit B. It does not extend to every form of Christian media, and the Complaint has not demonstrated or even alleged that it does. The Complaint does not plausibly allege facts showing why HCI's registration should be treated as covering radio broadcasting, live events, charitable fundraising, ministry services, or every digital-media service identified in HMG's registrations. *See* Exhibit C. The Complaint's conclusory assertion that the services are "identical or virtually identical" is contradicted by the pleaded registration and the parties' actual operations. A single television-broadcasting registration is not a deed to all of Christian media.

Third, the Complaint's likelihood-of-confusion allegations are formulaic. It asserts that confusion is likely because "HOPE" is a shared term, but provides no factual allegations supporting confusion under the Eleventh Circuit's likelihood-of-confusion factors, including the strength of the mark, the similarity of the goods or services, the similarity of the parties' consumers and trade channels, the similarity of advertising media, HMG's intent, or actual confusion. *See Tana v. Dantanna's*, 611 F.3d 767, 774-76 (11th Cir. 2010); *Sun Banks of Fla.,* 651 F.2d at 314-18. The omission matters because HCI admitted in its responses to HMG's requests for admission in the related TTAB cancellation proceeding against one of two HOPE MEDIA GROUP & design

registrations (U.S. Reg. No. 6,965,055) that it is not aware of any actual consumer confusion between the parties' marks. A true and correct copy of HCI's "Petitioner's Responses to Registrant's First Set of Requests for Admission" dated December 19, 2025, is attached hereto as Exhibit I (*see* Admission No. 1). That admission is especially significant because the parties' HOPE-formative marks have coexisted for years, HMG's HOPE ON DEMAND registration has coexisted with the HCI HOPE CHANNEL registration for more than six years, and HMG's other HOPE-formative registrations have coexisted with the HCI HOPE CHANNEL registration for more than three years. *See* Exhibits A-C, I. HCI itself has also acknowledged a crowded field of third-party HOPE-formative marks. *See* Exhibits G (pages 3-5)-H (pages 7-8).

Numerous unrelated third parties use or have registered HOPE-formative marks in connection with religious, charitable, media, entertainment, ministry, and related services, including religious TV, radio, and multimedia broadcasting services. A true and correct copy of examples of unrelated third-party HOPE-formative marks covering religious TV, radio, and multimedia broadcasting services accessed on May 29, 2026, is attached hereto as Exhibit J. That crowded field substantially weakens any inference that consumers encountering different HOPE-formative marks will assume a common source based on the word "HOPE" alone. Conclusory assertions that confusion is likely, without supporting facts, do not state a plausible claim. *Iqbal*, 556 U.S. at 678. HCI cannot have it both ways: it cannot tell the USPTO that "HOPE" is weak and crowded to secure a registration and then ask this Court to treat "HOPE" as a strong, distinctive mark entitled to broad protection to support broad enforcement.

**B. Count II (False Designation Under § 43(a)) Fails**

Count II asserts false designation of origin under 15 U.S.C. § 1125(a) based on the Asserted Unregistered Marks HOPE SABBATH SCHOOL, CELEBRATION OF HOPE, and HOPELINK.

But HCI's § 43(a) claim is even weaker than its registered-mark claim. To state a claim based on an unregistered mark, a plaintiff must plausibly allege that it has enforceable rights in the asserted mark and that the defendant adopted the same or a confusingly similar mark such that consumers are likely to confuse the two. *Tana*, 611 F.3d at 773. The Complaint merely labels the Asserted Unregistered Marks "inherently distinctive" and alleges generalized goodwill and use, without facts showing distinctiveness, secondary meaning, geographic scope, market penetration, priority, or Florida-specific confusion. Those omissions are fatal at the pleading stage because HCI cannot state a § 43(a) claim based on marks in which it has not plausibly alleged protectable rights.

**C. Count III (Cancellation) Fails**

Count III seeks cancellation of HMG's federal registrations. Section 1119 authorizes a court, in an action involving a registered mark, to determine the right to registration and order cancellation of registrations, but HCI still must plead a plausible substantive basis for cancellation rather than merely reciting priority, similarity, related services, and damage in conclusory terms. *See* 15 U.S.C. § 1119; *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. That claim fails because it is derivative of the same insufficient priority and likelihood-of-confusion allegations underlying Counts I and II. Notably, HCI does not plausibly allege damage, and because the Complaint does not challenge HMG's HOPE ON DEMAND registration, it is unclear how the continued registration of the Challenged Marks would damage HCI while the HOPE ON DEMAND mark does not. *See* Exhibits A, C. Section 1119 permits a court to rectify the register only in an "action involving a registered mark," but it does not eliminate the requirement that HCI plead a plausible substantive basis for cancellation, including likely confusion and cognizable damage from the challenged registrations. 15 U.S.C. § 1119. The Complaint does not plead facts showing Florida injury, actual or likely confusion, or why HMG's HOPE MEDIA GROUP and

HOPE EVENTS registrations damage HCI when HCI does not challenge HMG's coexisting HOPE ON DEMAND registration. HCI cannot demand cancellation of HOPE MEDIA GROUP and HOPE EVENTS while leaving the coexisting HOPE ON DEMAND registration in place. Count III should therefore be dismissed or, at minimum, narrowed to any cancellation theory that is supported by well-pleaded facts.

**D. Count IV (Florida Common-Law Unfair Competition) Fails**

Count IV asserts Florida common-law unfair competition. This state-law claim suffers the same infirmities – and then some. Florida trademark-based unfair-competition claims are analyzed under the same general likelihood-of-confusion framework as Lanham Act claims, and a plaintiff's failure to establish likely confusion defeats the Florida claim as well. *Custom Mfg.*, 508 F.3d at 647-48, 652-53. The Complaint contains no Florida-specific facts showing confusion, deception, competitive injury, or HMG's use of the Challenged Marks directed at Florida consumers. It instead recites that HMG traded off HCI's goodwill and created a likelihood of confusion "in the State of Florida." Compl. ¶¶ 138-43. That is not enough under *Twombly* and *Iqbal*.

## IV. IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF TEXAS

***Non-Waiver Statement.*** HMG's request for alternative transfer relief does not waive, and shall not be construed as waiving, HMG's objections to personal jurisdiction under Rule 12(b)(2), improper venue under Rule 12(b)(3), failure to state a claim under Rule 12(b)(6), or any other defense available under Rule 12(h) or otherwise. This alternative request is made solely in the event the Court declines to dismiss the complaint and solely to ensure that this case is heard in the most appropriate forum. *See Perrigo Co. v. Merial Ltd.*, 215 F. Supp. 3d 1329, 1335-38 (N.D. Ga. 2016) (§ 1404 transfer/stay motion did not waive later Rule 12(b)(2) defense); *see also APR, LLC v. Am. Aircraft Sales, Inc.*, 985 F. Supp. 2d 1298, 1302-03 (M.D. Ala. 2013) (motion to transfer

under § 1404(a) is not a Rule 12(b)(3) motion and is not governed by the waiver provisions of Rule 12(h)).

**A. Transfer Under 28 U.S.C. § 1406(a) or § 1631**

If the Court concludes that venue is improper in this District but declines to dismiss, the Court should transfer this action to the Southern District of Texas under 28 U.S.C. § 1406(a), which provides that a case filed in the wrong district "shall be dismissed, or if it be in the interest of justice, transferred to any district or division in which it could have been brought." Although HMG respectfully asserts that dismissal is the most appropriate result given the Complaint's jurisdictional and venue defects, transfer is at minimum warranted here. Similarly, if the Court concludes that it lacks personal jurisdiction, the Court may transfer under 28 U.S.C. § 1631, to a court where the action "could have been brought at the time it was filed" if transfer is in the interest of justice.

This action could have been – and it should come as no surprise to HCI that it should have been – brought in the Southern District of Texas: HMG resides there, HMG is subject to personal jurisdiction there, and a substantial part of the events giving rise to the claims occurred there. All roads lead to Texas. Transfer rather than dismissal would serve the interest of justice by avoiding refiling costs, preventing unnecessary delay, and ensuring that HCI's choice of an improper and inconvenient forum does not impose an avoidable burden on HMG while still allowing the dispute to proceed in a court with a genuine connection to the controversy. If this case is to be heard anywhere, it should be heard in Texas.

**B. Transfer Under 28 U.S.C. § 1404(a)**

Even if this Court were to find that jurisdiction and venue are technically proper in this District, the Court should transfer this action to the Southern District of Texas under 28 U.S.C. §

1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice." In deciding a § 1404(a) motion, courts consider whether the action could have been brought in the proposed transferee district and whether transfer serves the convenience of the parties and witnesses and the interest of justice. *APR*, 985 F. Supp. 2d at 1303. The relevant factors weigh heavily in favor of transfer:

*Convenience of the parties.* HMG is headquartered in the Southern District of Texas. HCI is headquartered in Maryland – not Florida. Neither party resides in this District. The Southern District of Texas is more convenient for HMG and no less convenient for HCI than the Southern District of Florida.

*Convenience of witnesses.* The key witnesses regarding HMG's adoption, use, and management of the Challenged Marks are HMG personnel located in Texas. Witnesses regarding branding strategy, mark-adoption decisions, registration decisions, and day-to-day operations for the Challenged Marks are all in or near the Southern District of Texas. Exhibit F (Paulo Decl. ¶¶ 3-4, 10). HMG maintains one small office in North Palm Beach, Florida, but the three employees based there perform operational roles for the WayFM and Vida Unida, and limited traffic-log responsibilities for other HMG stations; they do not have responsibilities related to this matter or to the branding decisions, registrations, or challenged uses of the Challenged Marks at issue in this case. Exhibit F (Paulo Decl. ¶¶ 5-7).

*Locus of operative facts.* All operative facts regarding HMG's conduct – the adoption, registration, branding, management, and use of the HOPE MEDIA GROUP, HOPE EVENTS, and HOPE NATION marks – occurred in Texas. This factor strongly favors transfer.

*Related Texas Declaratory Judgment action.* HMG does not rely on the Texas Declaratory Judgment Action to invoke a first-filed preference over this earlier-filed action. Rather, the Texas

action is relevant because it confirms that the Southern District of Texas can adjudicate the full controversy between the parties, including HCI's infringement, cancellation, forced-abandonment, domain-transfer, and unfair-competition theories, and because it demonstrates the strong Texas nexus to the parties' dispute.

*Interest of justice.* Texas has a significantly stronger connection to this dispute. This action concerns marks adopted and managed in Texas by a Texas organization. Exhibit F (Paulo Decl. ¶¶ 2-4, 10). Although HMG operates Florida stations and maintains a small North Palm Beach operations office in a multi-tenant building, those Florida activities relate to WayFM and Vida Unida station operations and limited traffic-log functions, not the Texas-based branding decisions, registrations, or challenged uses giving rise to this dispute. Exhibit F (Paulo Decl. ¶¶ 5-7, 10). The office has no external signage and does not outwardly display any of the Challenged Marks beyond the use of "Hope Media Group/WayFM" on building delivery and directory references. The office is also not intended for consumers to visit – it simply provides a workspace for the three employees in Florida. These limited uses of "Hope Media Group/WayFM" and complete absence of use of the other Challenged Marks are not sufficient to show that HMG operates Florida stations under the Challenged Marks or that Florida is the center of this controversy. Exhibit F (Paulo Decl. ¶ 7). HMG's websites and mobile applications are managed from outside Florida and can be accessed anywhere in the United States, not exclusively in Florida. Exhibit F (Paulo Decl. ¶ 9). Moreover, the operative events related to this dispute took place outside this District, and HCI has no direct contacts or activities in this District except for its counsel's Florida-based office. HCI has not alleged that it was damaged in this District, and its own headquarters are in Maryland. The Southern District of Texas is the natural and most efficient forum for resolving this controversy.

In short, every relevant factor points to Texas. HCI's selection of this District appears to be nothing more than an attempt to impose litigation costs on HMG by haling it into an inconvenient forum – the very type of abuse the venue and personal-jurisdiction doctrines are designed to prevent.

## CONCLUSION

For the foregoing reasons, Defendant Hope Media Group respectfully requests that this Court:

1. Dismiss this action for lack of personal jurisdiction under Rule 12(b)(2);
2. Dismiss this action for improper venue under Rule 12(b)(3);
3. Dismiss this action for failure to state a claim under Rule 12(b)(6);
4. In the alternative, transfer this action to the United States District Court for the Southern District of Texas, Houston Division, under 28 U.S.C. §§ 1406(a), 1631, and/or 1404(a); and
5. Grant such other and further relief as the Court deems just and proper.

Dated: June 22, 2026

Respectfully submitted,

By: */s/ Amanda K. Greenspon*
Amanda K. Greenspon
Florida Bar No. 1014584
agreenspon@munckwilson.com
*Attorney-in-Charge*

**MUNCK WILSON MANDALA, LLP**
2255 Glades Road, Suite 324A
Boca Raton, Florida 33431
Telephone: 561-210-0600
Facsimile: 972-628-3616

**ATTORNEYS FOR DEFENDANT HOPE MEDIA GROUP**

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2026, a true and correct copy of the foregoing was served via CM/ECF on all counsel of record.

*/s/ Amanda K. Greenspon*
Amanda K. Greenspon