**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-23123-BLOOM/Elfenbein**

HOPE CHANNEL INTERNATIONAL INC.,

Plaintiff,

v.

HOPE MEDIA GROUP,

Defendant.
_________________________________/

**ORDER ON MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon Defendant Hope Media Group's ("Hope Media") Motion to Dismiss ("Motion"), ECF No. [15]. Hope Channel International, Inc. ("Hope Channel") filed a Response in Opposition ("Response"), ECF No. [20], and Hope Media filed a Reply in Support ("Reply"), ECF No. [27]. The Court has reviewed the Motion, the supporting and opposing submissions, the record, and is otherwise fully advised. For the reasons that follow, the Motion is granted.

## I. BACKGROUND

In its Complaint, Hope Channel alleges it is a Maryland non-profit corporation located and doing business at 12501 Old Columbia Pike, Silver Spring, Maryland 20904. ECF No. [1] ¶ 3. Hope Media is a Texas non-profit corporation located and doing business at 1722 Treble Drive, Humble, Texas 77338. *Id.* ¶ 4. Hope Channel is a global Christian lifestyle network. *Id.* ¶ 8. Hope Channel is the owner of U.S. Trademark Registration No. 3066366 ("Plaintiff's Registration") for its HOPE CHANNEL Mark in connection with "television broadcasting, cable television broadcasting, and television broadcasting via a global computer network" in Class 38, and "entertainment, namely, a continuing religious program broadcast over television, satellite, audio,

and video media" in Class 41, which was filed on November 18, 2003 at the United States Patent and Trademark Office ("USPTO"), issued as a registration on March 7, 2006, and has a claimed date of first use and first use in commerce of October 10, 2003. *Id*. at 12.

Hope Channel currently uses its HOPE CHANNEL Mark in connection with television broadcasting services, cable television broadcasting services, satellite television broadcasting services, Internet broadcasting services, television production services, audio production services, video production services, podcast production services, podcast transmission services, downloadable audio podcasts in the field of religion, downloadable video podcasts in the field of religion, downloadable audio files in the field of religion, downloadable video files in the field of religion, movie production services, movie distribution services, online Bible study services, charitable fundraising services, informational services in the field of religion, online publications in the field of religion, organization of events in the field of religion, and organization of travel and tours (collectively, "Hope Channel's Goods and Services"). *Id*. ¶ 14. Hope Channel's content produced and broadcast under its HOPE CHANNEL Mark reaches hundreds of thousands of viewers every year. Hope Channel also advertises its Goods and Services in print publications as well as online and via social media. In addition, Hope Channel has received significant unsolicited media coverage for its HOPE CHANNEL Mark and its Goods and Services offered under the HOPE CHANNEL Mark. As a result, the customers and potential customers of Hope Channel, and the public in general, have come to know and recognize the HOPE CHANNEL Mark as identifying Hope Channel's Goods and Services as services of the highest quality, and associate the HOPE CHANNEL Mark exclusively with Hope Channel's Goods and Services. *Id*. ¶ 17.

Hope Channel has also used the HOPE SABBATH SCHOOL Mark ("HOPE SABBATH SCHOOL Mark") in connection with its Goods and Services in interstate commerce continuously

and without interruption since at least as early as January 1, 2015, the CELEBRATION OF HOPE Mark ("CELEBRATION OF HOPE Mark") in connection with its Goods and Services in interstate commerce continuously and without interruption since at least as early as November 26, 2018, and the HOPELINK Mark ("HOPELINK Mark") in connection with its Goods and Services in interstate commerce continuously and without interruption since at least as early as June 1, 2013. *Id.* ¶¶ 19, 23, 27.

Hope Media is a Christian media organization that owns and/or operates multiple radio stations offering Christian-themed content. Hope Media uses the name and HOPE MEDIA GROUP Mark ("HOPE MEDIA GROUP Mark") as the name of a parent company for these radio stations, which operate under a variety of secondary brands including KSBJ, Way FM, Vida Unida, and Worship 24/7. *Id.* at 32. According to Hope Media's websites at www.wayfm.com and www.vidaunida.com, the stations owned and/or operated by Hope Media within this judicial district include 88.1 FM (West Palm Beach); 88.3 FM (Panama City Beach); 90.3 FM (West Palm Beach); 100.5 FM (Charlotte County); 89.5 FM and 100.5 FM (Fort Meyers); 89.5 FM (Marco Island); and 89.5 FM (Naples), all of which operate under the "Way FM" brand, as well as 90.9 FM (Miami), 96.7 FM (Stuart); 88.1 FM HD2 (West Palm Beach), and 90.3 FM (West Palm Beach), which operate under the "Vida Unida" brand. *Id.* ¶ 36. In January 2025, Hope Media issued a press release advertising its expansion into the West Palm Beach area through the acquisition of two radio stations. *Id.* ¶ 37.

Hope Media has obtained three federal trademark registrations ("Challenged Marks") for its HOPE MEDIA GROUP Mark. *Id.* ¶ 41. The Challenged Marks are highly similar to Hope Channel's HOPE Marks in appearance, sound, meaning, and commercial impression. The

dominant term of each party's Marks is the term "HOPE." *Id.* ¶ 59. Both parties offer Christian-themed broadcasting services and ancillary and related services. *Id.* ¶ 60.

Hope Channel asserts four claims against Hope Media: (Count I) Federal Trademark Infringement in Violation of Section 32 of the Lanham Act 15 U.S.C. § 1114; (Count II) Federal Unfair Competition and False Designation of Origin in Violation of Section 43(a) of the Lanham Act 15 U.S.C. § 1125(a); (Count III) Cancelation of Hope Media's Trademark Registrations Pursuant to the Lanham Act, 15 U.S.C. §§ 1064 & 1119; and (Count IV) Unfair Competition Under Florida Common Law.

Hope Media moves to dismiss the Complaint for lack of jurisdiction. ECF No. [15] at 5. As a nonresident Defendant, Hope Media argues the Complaint fails to satisfy Florida's long-arm statute and Due Process. Hope Media also contends the Complaint should be dismissed based upon improper venue and that each count of the Complaint fails to state a claim. In the alternative, Hope Media seeks to transfer this action to the Southern District of Texas.

Hope Channel responds that this Court has both general and specific jurisdiction over Hope Media and that jurisdiction comports with Due Process. ECF No. [20] at 6-12. Hope Channel contends that venue in the Southern District of Florida is appropriate because Hope Media passed off its infringing goods and services under its HOPE Mark in the Southern District of Florida. Hope Channel contends it has alleged sufficient claims, and that Hope Media's request for transfer to the Southern District of Texas should be denied.

## II. LEGAL STANDARD

### A. Motion to Dismiss

The Federal Rules of Civil Procedure require a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a Rule 12(b)(6) motion, which requests dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When reviewing a motion under Rule 12(b)(6), a court generally must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in the plaintiff's favor. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002). " 'Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys' and are liberally construed." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). "Yet even in the case of pro se litigants this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

Courts generally "do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citation omitted). However, there is an exception when "a plaintiff refers to a document in its complaint, the document is central to its

claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Id.* (citation omitted). Furthermore, courts may consider "matters of which a court may take judicial notice" when ruling on a 12(b)(6) motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**B. Personal Jurisdiction**

Federal Rule of Civil Procedure 12(b)(2) provides that a court may dismiss a complaint for lack of personal jurisdiction. "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Technologies. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations omitted); *See also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). "Second, if the complaint alleged sufficient facts, and 'the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting its jurisdiction.'" *See Diulus v. Am. Express Travel Related Servs. Co., Inc.*, 823 F. App'x 843, 848 (11th Cir. 2020) (quoting *Mazer*, 556 F.3d at 1274). "Third, 'where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.'" *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010)). The Court must assess its personal jurisdiction over each defendant separately. Stubbs, 447 F.3d at 1360. "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citation omitted).

In assessing whether a nonresident defendant is subject to exercise of personal jurisdiction, federal courts apply a two-step test to determine "whether the exercise of jurisdiction (1) comports with the long-arm statute of the forum; and (2) does not violate the Due Process Clause of the

Fourteenth Amendment." *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 626 (11th Cir. 2010); Fed. R. Civ. P. 4(k)(1)(A). A court "[need] not reach the second question of the personal jurisdiction analysis" upon failure to establish that the long-arm statute permits the district court to assert personal jurisdiction over the defendant. *Id.*

**C. Florida's Long Arm Statute - § 48.193**

"The reach of the Florida long-arm statute is a question of Florida law.'" *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1271 (11th Cir. 2002) (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 257 (11th Cir. 1996)). "[F]ederal courts are required to construe [such law] as would the Florida Supreme Court." *Id*. (quoting *Madara*, 916 F.2d at 1514).

Under Federal Rule of Civil Procedure 4(k)(1)(A), federal courts apply the long-arm statute of the forum state — in this case, Florida. "Florida's long-arm statute provides for both general and specific personal jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (citing Fla. Stat. § 48.193(1)–(2)). The Eleventh Circuit has explained that a "defendant can be subject to personal jurisdiction under Florida's long-arm statute in two ways: first, section 48.193(1)(a) lists acts that subject a defendant to specific personal jurisdiction — that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida, Fla. Stat. § 48.193(1)(a); and second, section 48.193(2) provides that Florida courts may exercise general personal jurisdiction — that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida — if the defendant engages in 'substantial and not isolated activity' in Florida, § 48.193(2)." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F. 3d 1201, 1203–04 (11th Cir. 2015). Courts strictly construe Florida's long-arm statute in favor of the nonresident defendant. *Stonepeak Partners, LP v. Tall Tower Cap., LLC*, 231 So. 3d 548, 552 (Fla. Dist. Ct. App. 2017).

**D. Improper Venue under Rule 12(b)(3)**

When a defendant objects to venue under Rule 12(b)(3), the plaintiff bears the burden of showing that the venue selected is proper. *See Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (explaining that the plaintiff must make "only a prima facie showing of venue"); *BP Prods. N. Am., Inc. v. Super Stop 79, Inc.*, 464 F. Supp. 2d 1253, 1256 (S.D. Fla. 2006). "The facts as alleged in the complaint are taken as true, to the extent they are uncontroverted by defendants' affidavits." *Delong*, 840 F.2d at 845. The court may also consider facts outside the complaint to determine whether venue is proper. *See Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). In examining the record, the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. *Id.*

Generally, venue in federal civil actions is governed by 28 U.S.C. § 1391. "Pursuant to § 1391(b), venue is proper in: (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *TMJ Practice Mgmt. Assocs., Inc. v. Curran*, 2017 WL 3130421, at *3 (S.D. Fla. July 24, 2017). If venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

"[A]cknowledging that venue may be proper in two or more districts, the Eleventh Circuit has stated that 'only the events that directly give rise to a claim are relevant' and that 'of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered.'" *TMJ*, 2017 WL 3130421, at *3 (quoting *Jenkins Brick Co. v. Bremer*, 321

F.3d 1366, 1371 (11th Cir. 2003)) (footnote omitted). "[O]nly those acts and omissions that have a close nexus to the wrong" are relevant in the venue analysis. *Jenkins*, 321 F.3d at 1372. In conducting this analysis, "the proper focus of the venue inquiry is on the relevant activities of the Defendants." *Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc.*, 669 F. Supp. 2d 1353, 1357 (S.D. Fla. 2009); *see also TMJ*, 2017 WL 3130421, at *3 n.2 ("[I]n accordance with Eleventh Circuit precedent, the Court must focus its venue analysis not on all aspects of the relationships between the parties, but on the location of the acts and omissions giving rise to the claims asserted, those actions with a close nexus to the wrong.").

**E. Transfer of Venue Under 28 U.S.C. § 1404(a)**

Section 1404(a) of Title 28 of the United States Code embodies a codification and revision of the *forum non conveniens* doctrine, *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981), and it provides in relevant part that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought...." 28 U.S.C. § 1404(a); *see also Carucel Investments, L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1222-23 (S.D. Fla. 2016) ("Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice.") (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (citation omitted). "[T]he burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

## III. DISCUSSION

### A. Personal Jurisdiction

Hope Media argues that Hope Channel has not alleged tortious conduct or an injury in Florida. ECF No. [15] at 5-6. Hope Media contends this case involves a Maryland plaintiff suing a Texas Defendant over Texas-based conduct. Hope Media avers the sole basis for personal jurisdiction is Hope Media's operation of radio stations and provision of services in the Southern District of Florida, but Hope Media argues that those radio stations operate under different brand names, Way FM and Vida Unida. Hope Media acknowledges that it operates a small North Palm Beach office supporting operational work for those stations, but asserts that the North Palm Beach office does not handle branding decisions or registrations.

Hope Media further argues that, even if Hope Channel satisfies Florida's long arm statute, exercising jurisdiction would offend Due Process. Hope Media contends that it has not purposefully targeted any suit-related use of the Challenged Marks. According to the Declaration of Hope Media CEO Joe Paulo ("Paulo"), the adoption, management, and registration of the Challenged Marks occurred in Texas, not the Southern District of Florida. ECF No. [15-6] ¶¶ 2-4, 10. Paulo further states that Hope Media does not engage in targeted marketing or solicitation of Florida consumers under the Challenged Marks through the North Palm Beach Office. *Id.* ¶ 8. Hope Media avers that Hope Channel's alleged Florida facts concern Way FM and Vida Unida station operations, not substantial aspects of the alleged use of the Challenged Marks. Moreover, the alleged presence of the Challenged Marks on generally accessible websites and streaming platforms is, at most, nationwide accessibility that is insufficient to satisfy Due Process.

Hope Channel responds that it has satisfied Florida's long arm statute because it has shown that Hope Media has an office in Florida where it operates radio stations, and targets Florida with promotional material using the Challenged Marks. ECF No. [20] at 8. Hope Channel further

responds that the long arm statute is satisfied because Hope Media has committed a tort in Florida. Hope Channel contends that specific jurisdiction over Hope Media comports with Due Process because proceeding with this action in the Southern District of Florida will not place an undue burden on Hope Media, and the Court has an interest in adjudicating this dispute.

Hope Channel's Complaint alleges that Hope Media operates radio stations within Florida under the Way FM and Vida Unida brands. ECF No. [1] ¶ 36. The Complaint further alleges that, in January 2025, Hope Media advertised its expansion into South Florida via a press release. ECF Nos. [1] ¶ 37; [1-5]. Hope Media streams its content to consumers throughout the United States through its websites at www.hopemediagroup.com, www.wayfm.com, and www.vidaunida.com. *Id*. ¶ 38. Such allegations do not satisfy Florida's long arm statute.

First, Hope Channel purports to establish jurisdiction through Hope Media's operation of radio stations in Florida under the Way FM and Vida Unida brands. However, the Complaint does not allege that these brands use the Challenged Marks in question. The Court finds the operation of these stations is not a basis for jurisdiction. As to general jurisdiction, "'a corporation's operations in a forum other than its formal place of incorporation or principal place of business' will be 'so substantial and of such a nature as to render the corporation at home in that State' only in 'exceptional' cases." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d at 1204 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)). It is undisputed that Hope Media Group is a Texas non-profit corporation located in doing business at 1722 Treble Drive, Humble, Texas 77338. ECF No. [1] ¶ 4.

In *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017), the United States Supreme Court held that a railway company with over 2,000 miles of track and more than 2,000 employees in the proposed forum state was not "at home" because the inquiry of general jurisdiction requires an

appraisal of a corporation's activities in their entirety. Paulo's Declaration establishes that Hope Media maintains one small office in North Palm Beach in a multi-tenant building. ECF No. [8-6]. Such conduct is minimal when compared to the Complaint's allegations that Hope Media has rapidly expanded and owns and operates approximately fifty stations in twelve states. ECF No. [1] ¶ 35.

Second, Hope Channel purports to establish jurisdiction through its allegation that Hope Media committed a tort in Florida. While Fla. Stat. § 48.193(1)(a)(2) authorizes jurisdiction where a defendant commits a tortious act in the state of Florida, the allegations are insufficient. Hope Channel contends that the accessibility in Florida of Hope Media's website is enough to assert jurisdiction in a trademark infringement case. Hope Channel is mistaken. In *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008), the Court found that defendant's unauthorized use of plaintiff's trademarked name and picture on a website accessible in Florida was *only* sufficient to establish jurisdiction because defendant's conduct was expressly aimed at a specific individual in the forum state. The plaintiff in *Licciardello* was a Florida resident. *Id*. The Eleventh Circuit explicitly held:

> We hold only that where the internet is used as a vehicle for the deliberate, intentional misappropriation of a specific individual's trademarked name or likeness **and that use is aimed at the victim's state of residence**, the victim may hale the infringer into that state to obtain redress for the injury. The victim need not travel to the state where the website was created or the infringer resides to obtain relief.

*Id*. (emphasis added). Moreover, in *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357-58 (11th Cir. 2013), the Eleventh Circuit again made clear that the mere operation of a website alone does not give rise to purposeful availment anywhere the website can be accessed. Rather, the court held that a website in combination with a defendant's other contacts with Florida, such as the sale and distribution of infringing goods, was sufficient to satisfy Due Process. *Id*. Hope

Channel's Complaint fails to allege that Hope Media's use of the Challenged Marks caused harm suffered by Hope Channel, a Maryland non-profit corporation, in Florida. The Complaint describes Hope Channel as a "global Christian lifestyle network", but unlike the plaintiffs in *Licciardello* or *Louis Vuitton*, the Complaint fails to outline how it suffered harm in the forum state. For example, in *Louis Vuitton*, the plaintiff operated retail outlets and boutiques in the Southern District of Florida. The Complaint contains no such allegations linking Hope Channel to Florida.

Third, Hope Channel purports to establish jurisdiction because Hope Media "carries on business" in Florida. ECF No. [20] at 7. Fla. Stat. § 48.193(1)(a)(1) authorizes jurisdiction where a defendant operates, conducts, engages in, or carries on a business or business venture in Florida. To establish specific jurisdiction based on allegations that a party is "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state," Fla. Stat. § 48.193(1)(a) 1, "[t]he business activity must demonstrate a general course of business for pecuniary benefit connected with the alleged tort." *Neelu Aviation, LLC v. Boca Aircraft Maint.*, LLC, No. 18-cv-81445, 2019 WL 3532024, at *12 (S.D. Fla. Aug. 2, 2019) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)). "For this provision to apply, there must be a direct affiliation, nexus, or substantial connection between the basis for the cause of action and the business activity." *Borchers v. Amazon.com, Inc.*, No. 18-cv-61537, 2019 WL 5196117, at *3 (S.D. Fla. Jan. 30, 2019) (citing *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So. 2d 79, 82 (Fla. 1st DCA 1994)); *see also Neelu Aviation, LLC*, 2019 WL 3532024, at *12 ("The business activity must demonstrate a general course of business for pecuniary benefit connected with the alleged tort." (citing *Sculptchair, Inc.*, 94 F.3d at 627)). "The Court considers the quality, nature, and extent of the activity in the forum, and the foreseeability of consequences within the forum from outside the forum to determine if defendant purposefully

availed himself of the protection and privileges of the forum state." *Connor v. Ferris Mktg., Inc.*, No. 2:16-cv-871-FtM-29MRM, 2017 WL 4341311, at *3 (M.D. Fla. Sept. 30, 2017) (citing *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 993 (11th Cir. 1986)).

While Hope Channel has alleged that Hope Media issued aa press release announcing that Vida Unida will be broadcast in West Palm Beach and Martin County, operates Way FM and Vida Unida radio stations, and has an office in North Palm Beach, such allegations are not sufficient to establish jurisdiction. As the Court previously stated, the Complaint contains no allegation that Vida Unida or Way FM operate under the Challenged Marks but instead are unique brands. "Specific jurisdiction. . . requires a causal connection between the defendant's activities in Florida and the plaintiff's cause of action, a requirement known as 'connexity.'" *Canale v. Rubin*, 20 So. 3d 463, 466 (Fla. 2d DCA 2009) (quoting *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)). Here, no such connection exists between the alleged trademark infringement and Hope Media's activities in Florida.

As such, Hope Channel has failed to establish a basis for jurisdiction which satisfies both Florida's long arm statute and Due Process. Hope Media's Motion is granted. Because the Court lacks jurisdiction, it need not address the Parties' other arguments.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Hope Media's Motion to Dismiss, **ECF No. [15]**, is **GRANTED**.
2. Hope Channel's Complaint, **ECF No. [1]**, is **DISMISSED WITHOUT PREJUDICE**.
3. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 5, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:

counsel of record